UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACIE GRANDSTAFF,                           Case No. 16-12724

   Plaintiff,                 Stephanie Dawkins Davis
v.                                           United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.
_____/

## OPINION AND ORDER
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 21, 24)

## I. PROCEDURAL HISTORY

 A. <u>Proceedings in this Court</u>

On July 22, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3). On September 9, 2016, the parties filed a notice of consent to this Magistrate Judge's authority, which was signed by Judge Ludington on September 13, 2016. (Dkt. 15, 16). The matter is before the Court on cross-motions for summary judgment. (Dkt. 21, 24). A hearing on the cross-

motions for summary judgment was held on June 14, 2016, pursuant to notice. (Dkt. 25).

B.     Administrative Proceedings

On July 21, 2013, plaintiff filed claims for period of disability and disability insurance benefits, alleging disability beginning August 1, 2009.  (Dkt. 18-2, Pg ID 51).  The Commissioner initially denied plaintiff's disability application on October 8, 2013.  *Id*.  Thereafter, plaintiff requested an administrative hearing, and on February 18, 2015, she appeared without counsel before Administrative Law Judge ("ALJ") John A. Ransom, who considered his case *de novo*.  (Dkt. 18-2, Pg ID 62-80).  In a February 25, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  *Id*. at Pg ID 48-58. The ALJ's decision became the final decision of the Commissioner on June 3, 2016, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  *Id*. at Pg ID 44-46.

For the reasons set forth below, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

## II.     FACTUAL BACKGROUND

On the last date insured, plaintiff was 35 years old, which falls into the category of "a younger individual."  (Dkt. 18-2, Pg ID 57).  Plaintiff, a resident of

Flint, Michigan, has past relevant work as a support staff nurse aide, which is semi-skilled and heavy in exertion, and as a sales manager, which is exertionally sedentary and semi-skilled. *Id*. Plaintiff suffers from hip pain, back pain, neck pain, and shoulder pain. (Dkt. 18-2, Pg ID 53). Plaintiff stopped working in 2009 because her physician advised her to stop working due to her back condition. (Dkt. 18-2, Pg ID 66).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Dkt. 18-2, Pg ID 53). At step two, the ALJ found that plaintiff had the following severe impairments: left hip pain, neck and back pain, and right shoulder pain. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at Pg ID 53-54. The ALJ determined that plaintiff's residual functional capacity (RFC) as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a); with no repetitive bending, twisting or turning; occasional crawling, squatting, kneeling, and stair climbing; occasional pushing or pulling; no use of air or vibrating tools; no prolonged walking or standing; no overhead work; occasional keyboarding and fine dexterity of the right upper extremity with no limits on the left upper extremity with respect to fine dexterity.

*Id.* at Pg ID 54.  At step four, the ALJ determined that plaintiff could not perform any past relevant work.  *Id*. at Pg ID 57.  At step five, the ALJ found that, given plaintiff's age, education, work experience and RFC, there are sufficient jobs that exist in the national economy that plaintiff can perform.  *Id*.  Therefore, the ALJ concluded that plaintiff has not been under a disability from the alleged onset date through the last date insured.  *Id*. at Pg ID 58.

## III.  DISCUSSION

### A.  Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.    Step 2

1.    The Parties' Arguments

The ALJ found the following severe impairments: left hip pain, neck and back pain, and right shoulder pain. (Tr. 10). According to plaintiff, her medical records are indicative of a disabled person who suffers severely from more than merely pain in her hip, neck, back and right shoulder. Plaintiff maintains that the ALJ's severe impairment findings are insufficient under the law as there is an abundance of objective medical evidence, assessments, diagnoses, procedures, symptoms, complaints; *etc*. included in her medical records. At a bare minimum,

plaintiff asserts that the ALJ should have recognized a combination of more severe and non-severe impairments.

Plaintiff points to various assessments/diagnoses including lumbar disc protrusion; left lumbar radiculopathy; renal colic; kidney pain with nephrolithiasis (kidney stone); cervical adonopathy; arthritic change of left hip which may be post-traumatic; polyarthritis; helicobacter pylori infection; and obesity. (Tr. 177, 218, 269, 288, 313-314, 389, 404, 413, 436, 442, 448). Plaintiff also points to examples of objective medical evidence to support these conditions/diagnoses: (1) July 2010 lumbar spine MRI indicates L5-S1 disc protrusion; (2) August 2010 lumbar MRI shows stenosis from L3-S1 and a question of retrolisthesis at L5-S1; (3) August 2010 MRI indicates spondylosis at C3-4 with right foraminal narrowing; (4) January 2010 abdomen CT concluded Bilateral non-obstructing small renal calculi, slightly increased in number; 1 to 2 mm partially obstructing calculus involving the right distal ureter causing mild right sided hydronephrosic; (5) April 2010 abdomen CT impression small bilateral non-obstructing renal calculus; 2 cm partially obstructing calculus involving the right distal ureter causing mild right-sided hydronsphrosis; (6) August 2010 lumbosacral spine impression spondylosis; (7) December 2011 CT of abdomen/pelvis impression bilateral small non-obstructing renal calculi; 3.3 cm right adnexal cyst; (8) January 2013 CT of abdomen/pelvis impression bilateral multiple non-obstructing renal

8

calculi; 3.5 x 3.9 cm right ednecal cyst. This remains unchanged; and uncomplicated diverticulosis of the sigmoid colon without diverticulitis; (9) May 2013 AP view of pelvis show arthritis change of both hips but worse at the left side compared with the right side; (10) May 2013 xray shows osteoarthritis of left hip; (11) August 2010 cervical spine MRI impression degenerative changes worse at C3-4 where there is canal stenosis; (12) April 2011 lumbar spine MRI indicates L5-S1 disc protrusion; and (13) Upper GI endoscopy diagnosis gastritis. (Tr. 173, 175, 177, 202-203, 234, 246, 269, 304-305, 310, 313, 488, 541, 544).

Thus, plaintiff maintains that while she does suffer from severe impairments of neck and back pain, right shoulder pain, and left hip pain, as the ALJ found, she also suffers from multiple other severe impairments as indicated by the extensive medical evidence described above. Plaintiff contends that a thorough analysis and review of plaintiff's medical evidence should have resulted in a finding of more severe impairments, or at bare minimum a combination of both severe and non-severe impairments. According to plaintiff, the ALJ failed to properly identify and account for all severe impairments at Step 2, which should result in a reversal.

In response, the Commissioner argues that, as the Sixth Circuit has explained, plaintiff's argument is "misguided." *Anthony v. Astrue*, 2008 WL 508008, at **5 (6th Cir. Feb. 22, 2008). Like the adjudicator in *Anthony*, the ALJ

here specifically found at step two that plaintiff had severe impairments.  More fully, the ALJ found that plaintiff's following impairments were severe: left hip pain, neck pain, back pain, and right shoulder pain.  (Tr. 10).  As in *Anthony* – and as the ALJ here explicitly acknowledged (Tr. 9) – this finding "caused the ALJ to consider [Plaintiff's] severe and nonsevere impairments in the remaining [three] steps of the sequential analysis." *Id*.  As in *Anthony*, "[t]he fact that some of [Plaintiff's] impairments were not deemed to be severe at step two [of the sequential analysis] is therefore legally irrelevant." *Id*.  The Commissioner argues that this Court's inquiry into plaintiff's lead argument properly could end at this point.  Out of an abundance of caution, however, the Commissioner makes several observations in response to this argument.

First, the Commissioner points out that "severe" is a regulatory term of art. It means that an impairment "significantly limits" the "ability to do basic work activities."  20 C.F.R. § 404.1521(a).  The ALJ found that plaintiff's left hip pain, neck pain, back pain, and right shoulder pain were "severe" (Tr. 10), and plaintiff does not even assert – let alone make any attempt to sustain her burden of establishing – that any other specific impairment(s) caused any specific and "significant[]" limitations in her ability to perform any specific work activities. Thus, the Commissioner contends that plaintiff therefore waived any such argument, and failed to satisfy her burden of establishing that an error in the ALJ's

step-two finding caused plaintiff to suffer any prejudice.

Second, the Commissioner asserts that plaintiff misses the mark in emphasizing that she was diagnosed with various conditions as, "[t]he mere diagnosis of [a condition], of course, says nothing about the severity of th[at] condition." *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). For these reasons, the Commissioner submits that plaintiff's claim(s) of error must fail.

## 2. Analysis

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). As noted *supra,* the applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act. In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

416.920(c).  Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

In the view of the Court, the Commissioner properly points out that Sixth Circuit precedent readily establishes that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere.  *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal.  But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted); *Jackson v.*

*Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

The mere fact that plaintiff has been diagnosed with other conditions is insufficient, standing alone, to indicate that either reflects a severe impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Rather, at step two, plaintiff must show that the conditions not deemed "severe" significantly limit her ability to do basic work activities. Yet here, plaintiff points to no medical opinions in the record or other evidence to suggest that these conditions limited her or imposed any work-related limitations more than those found by the ALJ. Therefore, any error that might exist was entirely harmless. *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11, 2016).

C.     Step 3

1.     Parties' Arguments

Plaintiff asserts that the ALJ erred when he concluded that plaintiff suffers from three severe impairments – left hip pain, neck and back pain, and right shoulder pain, but only mentions plaintiff's back impairment at Step Three: "The claimant's back impairment fails to meet the requirements of listing section 1.04

or any other relevant listing section because the claimant lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." (Tr. 11). This statement is the only sentence in the Step 3 discussion of the underlying decision. There is no discussion of whether plaintiff's other severe impairments – left hip pain, neck pain, and right shoulder pain – meet any of the Listed Impairments. According to plaintiff, the Step 3 discussion of the decision does not even mention these other severe impairments or their respective Listings. The administrative law judge in a Social Security Disability case has a duty under the law to examine all of claimant's severe impairments under the appropriate listings, which, plaintiff maintains, was not done in this case.

Further, when considering presumptive disability at Step 3, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments, and must give a reasoned explanation for his or her findings and conclusions in order to facilitate meaningful review. *Reynolds v. Comm'r*, 424 Fed. Appx. 411, 416 (6th Cir. 2011). According to plaintiff, it is not her responsibility to point out to the ALJ which Listed Impairments she thinks the identified severe impairments would equal. The decision underlying this case failed to address all of plaintiff's severe impairments and their relevant listings within the Step Three discussion which, plaintiff's says is a reversible error. Plaintiff points out the court's observation in

another case wherein it stated:

> It was not Christephore's (Claimant) job to point the
> relevant listings out to the ALJ; it was the ALJ's job to
> identify and address them. *See Burnett*, 220 F.3d at 120
> n. 2 ("Putting the responsibility on the ALJ to identify
> the relevant listed impairment(s) is consistent with the
> nature of social security disability proceedings which are
> inquisitorial rather than adversarial and in which it is the
> ALJ's duty to investigate the facts and develop the
> arguments both for and against granting benefits."
> (citations and quotation marks omitted)). Thus, ALJ
> Perez failed to identify the standard to be applied and to
> apply that standard. It is impossible to determine whether
> substantial evidence exists to support the ALJ's third
> step evaluation.

*Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *10-11 (E.D. Mich. June 18, 2012). Plaintiff contends that here, as in *Christephore*, the ALJ did not investigate the facts and develop arguments both for and against granting benefits. The decision does not indicate that any medical evidence was examined by the ALJ to determine that Listings were not met, and there is not even a mention of the other severe impairment findings of neck pain, left hip pain, and right shoulder pain.

Further, plaintiff asserts that the one sentence Step 3 discussion regarding back pain not meeting Listing 1.04 is simply insufficient as there is no evaluation of the medical evidence, nor does the decision include a complete explanation as to why each section of Listing 1.04 has not been met. According to plaintiff, a

proper analysis under the law would dictate at minimum a review of the medical documentation to determine if plaintiff would meet the listing.

In response, the Commissioner points out that the State agency physician reviewed the evidence of record (Tr. 38-41), conducted a function-by-function analysis of plaintiff's work-related limitations (Tr. 43-44), then opined that plaintiff's impairments did not meet or equal any Listing (Tr. 42, 47). Dr. Abbasi expressed that opinion by completing a form titled Disability Determination And Transmittal ("DD&T Form"). (Tr. 47). As the Agency explicitly states in its official guidance, "[t]he signature of a State agency medical or psychological consultant on [either a DD&T Form or certain other forms] ensures that consideration by [an expert] physician (or psychologist) designated by the Commissioner has been given to the question" of whether a claimant's impairments meet or equal any Listing. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3. According to the Commissioner, the ALJ effectively adopted that opinion when he found that plaintiff "did not have an impairment or combination of impairments that met or medically equaled" any Listing. (Tr. 10). The Commissioner maintains that he was entitled to do so because State agency physicians are "highly qualified . . . experts" in the evaluation of disability under the Act. *See* 20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. § 404.1527(c)(6).

The Commissioner urges the Court to reject plaintiff's argument that

remand is required because the ALJ failed to explicitly address why plaintiff's left hip pain, neck pain, and/or right shoulder pain (collectively, "Disputed Impairments") did not meet or equal one or more unspecified Listing(s). The Commissioner contends that plaintiff's reliance on *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411 (6th Cir. 2011) is misplaced. As the Sixth Circuit has explained, *Reynolds* does not require remand unless the claimant can "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the [L]isting. Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a [L]isting at Step Three." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. Sept. 8, 2014) (distinguishing *Reynolds*; internal citations omitted); *see also*, *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. Appx. 359, 366 (6th Cir. Nov. 17, 2014) (remand not required where the claimant "has not shown that his impairments met or medically equaled in severity any listed impairment"; distinguishing *Reynolds*). The Commissioner maintains that *Reynolds* does not require remand here because plaintiff has not even identified any Listing that any disputed impairment allegedly meets, let alone made any effort to sustain her heightened burden of establishing that said impairment meets every element of that Listing. It therefore suffices to observe that the State agency physician explicitly considered plaintiff's left hip, neck, and right shoulder impairments (Tr. 40-41), then opined that those

impairments did not meet or equal Listing 1.02, Listing 1.04, Listing 11.14, or any other Listing.  (Tr. 42, 47).

Next the Commissioner urges the Court to also reject plaintiff's argument that remand is required because the ALJ did not adequately articulate his finding that plaintiff's back impairment did not meet or equal Listing 1.04.  Again, the Commissioner points out that the State agency physician reviewed the evidence of record (Tr. 38-41), conducted a function-by-function analysis of plaintiff's work-related limitations (Tr. 43-44), and explicitly opined that plaintiff's back impairment did not meet or equal Listing 1.04.  (Tr. 42, 47).  The Commisioner points out that plaintiff does not even assert – let alone make any attempt to sustain her heightened burden of establishing – that her back impairment met or equaled Listing 1.04.  As a consequence, the Commissioner maintains that she has waived any such argument, and failed to sustain her burden of establishing that the alleged error caused her to suffer any prejudice.  For these reasons, the Commissioner submits that plaintiff has not sustained her heightened burden of establishing both that (1) the ALJ committed any error when he effectively adopted the opinion of the State agency physician that plaintiff's impairments did not meet or equal any Listing and (2) any alleged error by the ALJ caused plaintiff to suffer any prejudice.

2.     Analysis

Under the theory of presumptive disability, a claimant is eligible for benefits

if he or she has an impairment that meets or medically equals a Listed Impairment.

*See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich.

June 18, 2012).  When considering presumptive disability at Step Three, "an ALJ

must analyze the claimant's impairments in relation to the Listed Impairments and

must give a reasoned explanation of his findings and conclusions in order to

facilitate meaningful review."  *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424

Fed. Appx. 411, 416 (6th Cir. 2011)).  An ALJ's failure to sufficiently articulate

his Step Three findings is error.  *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d

846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v.*

*Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in

a series of cases where the ALJ "made only a blanket statement that the claimant

did not meet or equal a Listing section").  For example, in *Andrews v. Comm'r of*

*Soc. Sec.*, 2013 WL 2200393 (E.D. Mich. May 20, 2013), plaintiff argued that the

ALJ erred in failing to consider whether her cervical and lumbar spine

impairments meet or medically equal Listing 1.04A for "disorders of the spine."

*Id.* at *11.  The ALJ there simply stated "[t]he claimant does not have an

impairment or combination of impairments that meets or medically equals one of

the listed impairments...."  *Id.*  The court noted that the ALJ explicitly found that

plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

The court, however, will not overturn an ALJ's decision if the failure to articulate Step 3 findings was harmless. *See M.G.*, 861 F.Supp.2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled...." *Id.* at 861 (citation omitted, emphasis in original). This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting ... that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)). As the *Staggs* court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)). Thus, remand is

not required where the evidence makes clear that even if the ALJ "had made the required findings, [she] would have found the claimant not disabled." *M.G.*, 861 F.Supp.2d at 861. Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met. *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").

In order for plaintiff to meet the criteria of Listing 1.04A, she must show that she has a disorder of the spine with: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004). Even if plaintiff cannot demonstrate that she meets the criteria of Listing 1.04A, however, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence

that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004). This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to all the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003).

Here, plaintiff fails to offer the requisite record evidence to support her contention that the ALJ should have found at Step Three that her lumbar impairment satisfies the criteria of Listing 1.04A. *See Roby*, 48 Fed. Appx. at 536 ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted). Plaintiff does not suggest that there is evidence in the record of nerve root compression or muscle weakness with sensory loss. Accordingly, although the ALJ did not provide an extensive discussion of whether plaintiff's impairments met or equaled Listing 1.04, a review of the ALJ's decision and the record shows that such an error was harmless.

As to the ALJ's alleged failure to identify and discuss other Listings as they might relate to plaintiff's other areas of severe pain, the Court finds no error. Again, plaintiff retains the burden of proving that she met or medically equaled a Listing. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Here, plaintiff does not cite to any specific listing or explain how the evidence in the record satisfies a listing's criteria. Instead, she summarily states that the ALJ failed to consider unidentified Listings that might relate to the other areas of pain found to be severe by the ALJ. Plaintiff asserts that she is not obliged to identify any Listings for the ALJ to consider, citing *Christephore*. The Court finds *Christephore* to be distinguishable from the present case. There, the ALJ relied on the Listing that included a general category of auto-immune diseases, but failed to examined the sub-listing that specifically applied to HIV. The Court concluded that it was not the plaintiff's job to point the ALJ to the correct Listing that specifically applied to HIV. Here, plaintiff does not complain that the ALJ applied the wrong Listing. Rather, she complains that one Listing was not correctly applied (Listing 1.04) and that some other, as yet unidentified Listing(s) that might apply to hip pain, neck pain, and shoulder pain were not applied. Plaintiff does not suggest that the ALJ failed to consider some subsidiary list that more specifically applied to her severe impairments. Thus, *Christophore* is inapposite.

In sum, the Court agrees with the Commissioner that, absent a showing by the claimant that her impairments meet the specified listing criteria (and she has not even identified any other Listing that should be considered), she cannot establish actionable error, and the ALJ's decision should be affirmed. *See Harvey*

*v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D. Mich. Oct. 28, 2014)

("Although the ALJ did not explain his reasoning at Step Three, Harvey has not

shown that she suffered prejudice as a result."); *Moran v. Comm'r of Soc. Sec.*,

2014 WL 4197366, at *26 (E.D. Mich. Aug. 22, 2014) ("ALJ's analysis does not

need to be extensive if the claimant fails to produce evidence that she meets the

Listing."). Plaintiff's Step Three argument is, therefore, rejected.

      D.    <u>RFC/Credibility</u>

          1.    Parties' Arguments

The ALJ found that plaintiff has the residual functional capacity to perform

sedentary work with the following limitations: no repetitive bending, twisting or

turning; occasional crawling, squatting, kneeling, and stair climbing; occasional

pushing or pulling; no use of air or vibrating tools; no prolonged walking or

standing; no overhead work; and occasional keyboarding and fine dexterity of the

right upper extremity with no limits on the left upper extremity with respect to fine

dexterity. (Tr. 11). According to plaintiff, the ALJ's RFC does not comply with

the regulations and it does not accurately portray plaintiff's impairments. In

*Varley v Secretary of HHS*, 820 F.2d777, 779 (6th Circuit 1987), the court stated

that the RFC assessment must accurately portray the claimant's physical and

mental impairments. As argued earlier in this brief, the ALJ did not properly

identify all of plaintiff's severe and/or non-severe impairments, so it would be

impossible for the ALJ to consider all of her impairments when he made his RFC determination. Accordingly, plaintiff maintains that his RFC finding does not comply with 20 CFR 404.1520(e), 404.1545, and SSR 96-8p.

Plaintiff further argues that there is not a scintilla of evidence to support the RFC that plaintiff is able to perform sedentary work. Plaintiff points out that the discussion of residual functional capacity in the decision is less than three pages long, and the first page consists mostly of general language rather than analysis of plaintiff's medical evidence. (Tr. 11-13). She further avers that the portion of that section which evaluates the medical evidence consists of merely one page, which is insufficient considering plaintiff submitted over four hundred pages of medical records, in addition to the other evidence in the file. (Tr. 12-13, 159-315, 318-566). Plaintiff asserts that the decision lacks a complete discussion in support of the ALJ's finding that she is able to perform sedentary work, and thus it does not meet his burden of proof. Plaintiff cites *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000), *superseded by regulation on other grounds* by 20 CFR §1560(c)(2)*, where the Second Circuit found that the Commissioner had the burden at the fifth step of the disability analysis to prove that the plaintiff could perform sedentary work. *Id.* at 123. As a result of the *Curry* decision, the Commissioner issued AR 00-4(2), requiring the Commissioner to re-evaluate certain cases according to the decision in *Curry*." (citation omitted). Plaintiff contends that, based on the extremely brief

discussion of medical evidence in the underlying decision, and its obvious failure to identify all of plaintiff's severe and/or non-severe impairments, one can conclude that there was insufficient consideration given to all of the objective medical records, assessments, diagnoses, and treatment, as well as her own subjective symptoms. And, according to plaintiff, at no point in his RFC discussion did the ALJ specify the functions that she is capable of performing. The underlying decision in this case exhibited no attempt to reconcile Social Security Ruling 96-8p.

Plaintiff also argues that the ALJ's credibility analysis contains no scrutiny of facts to support what basically consists of two unsupported general statements. In his decision, the ALJ states: (1) "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision"; and (2) "The claimant's allegations are only partially credible." (Tr. 12, 13). The ALJ does not state which of plaintiff's allegations he finds to be "only partially credible," and he does not state which of her "statements concerning the intensity, persistence and limiting effects of these symptoms" he found to be not entirely credible. Instead, the foregoing portion of the decision consists of conclusory statements without any explanation or citations to the record. Per SSR 16-3p, an ALJ may not make conclusory statements about a claimant's subjective symptoms, but rather the ALJ

must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." According to plaintiff, the general, conclusory statements set forth above regarding her credibility and symptoms do not comply with the Regulations.

In response, the Commissioner asserts that plaintiff's burden on this issue is particularly heavy because she has elected to challenge the ALJ's finding that her statements were not credible to the extent she alleged limitations beyond those set forth in the RFC finding. As the Sixth Circuit has explained, this challenge "face[s] an uphill battle," *Daniels v. Comm'r of Soc. Sec*., 152 Fed. Appx. 485, 488 (6th Cir. 2005), because credibility findings are entitled to such "great weight and deference" (*id*.) that they are "virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec*., 540 Fed. Appx. 508, 511 (6th Cir. 2013). The Commissioner points out that plaintiff does not assert or establish that she had any specific, work-related, functional limitations beyond those set forth in the highly restrictive RFC finding. Accordingly, the Commissioner maintains that she has, therefore, (1) waived any such argument and (2) failed to sustain her burden of establishing that any alleged error caused her to suffer any prejudice. The Commissioner points out that this Court's inquiry into plaintiff's final argument properly could

end at this point, but goes on to make additional arguments.

First, the State agency physician essentially opined that plaintiff did not have any limitations beyond those set forth in the highly restrictive RFC finding. Moreover, the ALJ gave plaintiff the benefit of the doubt by including several limitations in the RFC finding that went above and beyond those opined by the State agency physician. Compare Tr. 11 with Tr. 43-44.

Second, plaintiff relies heavily on authority that has never been the law in this Circuit, and has not been good law anywhere for over a decade. More fully, plaintiff relies heavily on the out-of-Circuit decision in *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000), and the Agency's Acquiescence Ruling 00-4(2)17 for the proposition that "the Commission [sic] had the burden at the fifth step of the disability analysis to prove that the plaintiff could perform sedentary work." (Pl's Mem. 16). The Commissioner points out that AR 00-4(2) explicitly provided that it applied only to claims in which the claimant – unlike plaintiff here – resided within the jurisdiction of the out-of-Circuit court that decided *Curry*. AR 00-4(2). Accordingly, neither *Curry* nor AR 00-4(2) ever applied within the Sixth Circuit. Plaintiff also neglects to mention that the Agency amended the regulations over a decade ago to make it clear that – contrary to *Curry* – the claimant (as opposed to the Agency) has the "burden to prove what [his or her] residual functional capacity is." 68 FR 51317-01; 2003 WL 22001984. The Agency then

rescinded AR 00-4(2) on the ground that it had become moot. *Id.* Accordingly, AR 00-4(2) is no longer good law and – as the same Court that decided Curry acknowledged seven years ago – "the new regulations abrogate the *Curry v. Apfel* standard of review." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Third, the Commissioner contends that there is no basis in either law or logic for plaintiff's repeated assertions that the ALJ failed to properly consider certain evidence because he did not explicitly address it. To the contrary, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 664 (6th Cir. May 21, 2004) ("The ALJ's failure to discuss [certain facts] does not indicate that they were not considered."). Significantly, the ALJ repeatedly and explicitly stated that he carefully considered all the evidence in the entire record. (Tr. 8, 10, 12). According to the Commissioner, it therefore suffices to observe that plaintiff does not identify any specific evidence that the ALJ allegedly failed to consider, let alone make any attempt to sustain her burden of establishing that such evidence proved that she had any specific, work-related, functional limitations beyond those set forth in the highly restrictive RFC finding. Plaintiff has therefore waived any such argument, and failed to establish that any alleged error caused her to suffer

any prejudice.

Fourth, the Commissioner contends that plaintiff misses the mark when she emphasizes that "the assessment of residual functional capacity must reflect a function-by-function analysis of an individual's capabilities." (Pl's Mem. 17). Although that is true, it is equally true that – in light of the distinction between "what an ALJ must consider and what an ALJ must discuss in a written opinion" – an adjudicator is not required to "'produce [a function-by-function analysis] in writing.'" *Delgado v. Comm'r of\ Soc. Sec*., 30 Fed. Appx. 542, 547-48 (6th Cir. 2002). The Commissioner concludes, therefore, that it suffices to observe that the State agency physician – a "highly qualified . . . expert[]" in the evaluation of disability under the Act – conducted a function-by-function analysis of plaintiff's work-related abilities (Tr. 43-44), then essentially opined that plaintiff did not have any limitations beyond those set forth in the highly restrictive RFC finding.

Fifth, the Commissioner maintains that plaintiff does not accurately characterize the decision when she asserts that the ALJ's credibility finding "basically consists of two unsupported general statements," i.e., (a) plaintiff's statements "'are not entirely credible for the reasons explained in this decision'" (Pl's Mem. 17, quoting Tr. 12) and (b) plaintiff's "'allegations are only partially credible'" (Pl's Mem. 18, quoting Tr. 13). To the contrary, the Commissioner asserts that the ALJ explicitly stated – in the same paragraph containing one of the

statements that plaintiff quotes (Tr. 13) – that he discounted the credibility of plaintiff's allegations on the following grounds:

> (1) [Plaintiff's] allegations of disabling symptoms are not fully substantiated.
>
> (2) [Plaintiff] has not required recent treatment.
>
> (3) Prior treatment records indicate [that Plaintiff] had inconsistent complaints of pain (Exhibit 3F).
>
> (4) There is no indication [that Plaintiff] requires surgery.
>
> (5) EMG testing and nerve conduction studies performed May 29, 2013, confirmed no evidence of radiculopathy in the lower extremities (Exhibit 3F, page 7).
>
> (6) The objective evidence is consistent with restricted sedentary work [as described in the RFC finding].

More generally, the ALJ discounted the credibility of plaintiff's allegations that she had limitations beyond those set forth in the highly restrictive RFC finding on the ground that said finding "is supported by the objective medical evidence, including [the] lack of recent treatment and [the] findings on clinical examination." (Tr. 13). The Commissioner points out that plaintiff does not even acknowledge any of these grounds, let alone make any attempt to sustain her burden of establishing that the ALJ either failed to accurately characterize any of the facts supporting any of those grounds, or was not legally entitled to consider such grounds. She has, therefore, waived any challenge to those grounds.

Finally, the Commissioner contends that plaintiff does not accurately characterize the decision when she asserts that the ALJ failed to specify the particular statements that he found to be "not entirely credible" (Pl's Mem. 18, referring to Tr. 12). When an adjudicator finds that a claimant's statements "are not entirely credible," then goes on to make a finding about that claimant's RFC, that means the claimant's statements are not credible to the extent that he or she alleged limitations beyond those set forth in the RFC finding. The Commissioner says that is plainly what the ALJ meant here.

2. Analysis

As an initial matter, plaintiff's reliance on *Curry* and AR 00-4(2) is entirely misplaced as explained in detail by the Commissioner. And, in the view of the Court, the ALJ's credibility analysis and resulting RFC are supported by substantial evidence. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the

ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to

support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

It is important to remember that mere diagnosis does not equate to a disability or any particular functional limitation. *See e.g.*, *Jordan v. Colvin*, 2014 WL 5796713, at *5 (E.D. Ky. Nov. 6, 2014) ("[T]the mere fact that a claimant has been diagnosed with a variety of conditions does not equate automatically with any functional limitation.") (citing *Parley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."). With this principle in mind, the Court concludes that the ALJ's credibility analysis and resulting RFC are supported by substantial evidence. The ALJ pointed to medical evidence suggesting that while plaintiff complained of pain, her symptoms were not as severe as alleged: lumbar x-rays showed minimal spondylosis and no acute findings; mild degenerative changes with mild canal stenosis; EMG testing revealed no radiculopathy. (Dkt. 18-2, Pg ID 55-56). The ALJ pointed out that plaintiff had not recently been treated, did not require surgery, and did not always complain of pain at her office visits. (Dkt. 18-2, Pg ID 56). Yet, the ALJ plainly recognized that plaintiff had very serious functional limitations and accordingly limited her to a reduced range of sedentary

work. *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185 at *3 (1996) ("Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations.").

Plaintiff's argument that the ALJ failed to meet the requirements of SSR 96-8p, 1996 WL 374184 regarding the narrative requirements for decisions and a "function-by-function" analysis of plaintiff's abilities is not well-taken. SSR 96-8p simply directs an ALJ to assess an RFC in the context of what a claimant can do on a "regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1-2. There is no indication that the Ruling was intended to impose a formalistic requirement that an ALJ expressly state that the RFC reflects a claimant's ability to perform the specified level of activity on a regular and continuing basis. *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing."). An "ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 Fed. Appx. at 548. Here, no particular inconsistencies are alleged; and the ALJ discussed the relevant evidence, cited supporting facts and evidence, and concluded that the evidence supporting his conclusion that plaintiff could perform

a significantly reduced range of sedentary work.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date:  September 26, 2017        s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 26, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov